(No. 18806.—

THE PEOPLE *ex rel.* H. T. Hollingshead *et al.* Defendants in Error, *vs.* THE AMERICAN DISCOUNT COMPANY *et al.* Plaintiffs in Error.

*Opinion filed October 25, 1928.*

NEWMAN, POPPENHUSEN, STERN & JOHNSTON, (EDWARD R. JOHNSTON, and HENRY JACKSON DARBY, of counsel,) for plaintiffs in error.

DENT, DOBYNS & FREEMAN, (HOWARD A. WILL, of counsel,) for defendants in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

The Appellate Court affirmed a judgment of the circuit court of Cook county awarding a writ of *mandamus* against the American Discount Company, a corporation, and Myron W. Whittemore, one of its directors. The record is brought to this court for review upon a petition for writ of *certiorari*.

The American Discount Company is a corporation organized under the laws of the State of Delaware, and in April, 1919, was licensed to do business in this State. The corporation issued 5000 shares of preferred and 5000 shares of common stock. The petition for the writ of *mandamus* was filed on the relation of the owners of 216 shares of preferred and 104 shares of common stock. The summons was served on April 30, 1926. After the corporation was licensed to do business in this State it opened its principal offices at 332 South Michigan avenue, Chicago, and began the transaction of business. Harry C. Radon was president and treasurer of the company, and George E. Traub was secretary. Radon, Traub and Whittemore were the directors, and Whittemore was the corporation's designated agent upon whom process might be served in this State. The American Discount Company and Whittemore answered the petition. After issues were made up the cause was tried before the court without a jury, and there was a finding and judgment in favor of petitioners.

The American Discount Company did no business after it was licensed in Illinois except in the city of Chicago. After it began business in that city it paid some dividends, but no dividends had been paid for some years before the petition was filed. The stockholders in this State in 1925 began efforts to be permitted to examine the books and records of the company but did not succeed. In May, 1925, the board of directors of the corporation adopted a resolution to establish an office in New York City, and later adopted a resolution approving the acts of the officers in establishing an office in New York City. No stockholders'

meeting had been held for three or four years before the petition was filed. The latter part of April, 1926, the corporation began moving its property from its Chicago office and so continued in the removal until April 30, 1926. On May 6, 1926, it filed an affidavit of withdrawal and surrendered its authority to do business in this State. The affidavit was sworn to by Radon, the president, and Traub, the secretary, and stated the corporation discontinued business in Illinois on February 27, 1926. The evidence tends to show the corporation continued to do business in Illinois until May 1, 1926, but not much business had been done in the last few days before that date. There was a conflict in the evidence as to the exact dates the books and records of the corporation were removed from its Chicago office for transportation to New York. Ethel M. Bartlett, an employee of the corporation until September, 1926, testified she was cashier, stenographer, and did general office work for the corporation. She was familiar with the books used in the office, which were a general ledger and cash book. She never saw the corporation's minute book or stock book. She testified the last books were sent out of the Chicago office on April 27, 1926, and were sent to New York by American Railway Express. They were put in a large steel trunk, together with office supplies, folders and other materials, and shipped to New York. All that remained after April 27 was furniture, which was taken out of the Chicago office April 29 or 30. The only remaining thing was the cashier's cage. The lease of the corporation expired May 1, 1926. The witness went to the New York office May 10 or 11. The books and records in the office at New York were the same books and records formerly used in Chicago. The agent of the building in which the Chicago office was maintained testified no property was allowed to be removed from any office in the building unless a requisition or pass was given therefor. A record was kept of all passes issued, and the records showed permission was given April 29,

1926, to remove one adding machine. A pass was issued April 29, 1926, to remove files, books and packages of the corporation from its office, and on the same day a pass was given for removing three typewriters. April 30 a pass was given for the removal of a Globe-Wernicke file cabinet, and on the same date a pass was issued for removing the furniture of the corporation. It was established by the evidence that the petitioners, or some of them, had made repeated demands to examine the corporation's books. They complained because no stockholders' meetings had been held and no dividends paid. They made repeated efforts to take the matter up with the president of the corporation, but to no avail. The president evaded and kept away from the stockholders for a considerable period of time before the petition was filed.

The record is replete with testimony of some of the petitioning stockholders of their acts in trying to secure an examination of the books and an interview with the president or some of the officers. In all these efforts they were thwarted by the conduct of the president, and were also unable to see the secretary. One of the stockholders who was a petitioner visited the corporation's office four days in succession and waited for the president to appear. The stockholder had been told over the telephone by the president that he would be down to the office soon. The third day he visited the office the chair he sat on was removed, and the fourth day he took a chair with him and remained in the office until he was thrown out by a man who appeared to be employed in the office. On March 22 or 23, 1926, the same stockholder and counsel employed by the petitioning stockholders went to the office of Whittemore, who was a practicing lawyer in Chicago with offices on LaSalle street, and made a written demand for permission to examine the books. He refused, and said that he did not have possession of or any power or authority over the books. He was asked to write an order giving the petitioning stock-

holders the right to examine the books, and he declined to do so. Another witness, a lawyer who represented one or more of the petitioning stockholders, testified that he called up the company's office in the spring of 1925 more than a dozen times and asked for Radon, the president. He was told by the person answering the telephone that Radon was not in Chicago, and witness told the person who answered that he represented a stockholder who would like to examine the books. The person who answered was a lady and told witness he would have to see Radon. He asked to have Radon call him, but Radon never called. Witness wrote a letter June 11, 1925, and mailed it, addressed to the "American Discount Company, attention of Mr. H. C. Radon, President," but received no reply. A copy of the letter was introduced in evidence. No explanation is or can be given of the acts of the president in evading meeting any of the petitioning stockholders. The petition, as we have stated, was filed April 28, 1926, and the summons was served April 30, 1926.

Plaintiffs in error contend the judgment is erroneous as to Whittemore because he never did have possession of the books and it was not within his power to bring them to Chicago; that the corporate books and records were shipped from Chicago to New York before the summons was served. As to the latter proposition, the circuit court refused to find that all the corporate books and records were shipped before the summons was served, and the Appellate Court said the court was warranted in finding that all the books and records had not been taken out of Illinois before service was had upon Whittemore, the corporation's statutory agent. Whittemore was a director of the corporation and was a proper party defendant. The American Discount Company further contends that it was not doing business in Illinois when suit was instituted or when the summons was served and the judgment rendered; that the corporation books and records were in New York or in

transit to that place, and that the court could not make an effective decree because such decree can only be enforced by proceedings for contempt of parties who are beyond the jurisdiction of the court. It is argued that Whittemore can not produce the books because they are in New York in the possession of the officers of the corporation, and to affirm the judgment would subject him to penalties incident to a contempt of court.

Section 38 of the general Corporation act (Smith's Stat. 1927, p. 703,) expressly provides that each stockholder of a corporation shall have the right at all reasonable times, by himself or his attorneys, to examine the records and books of account, and a penalty is provided for any officer or director who denies access of the stockholders to the books. Section 84 of the same act (Smith's Stat. 1927, p. 713,) provides: "A foreign corporation admitted to do business hereunder shall enjoy the same, but no greater rights and privileges and be subject to all the liabilities, restrictions, duties and penalties now in force or hereafter imposed upon domestic corporations of like character, and to the same extent as if it had been formed under the laws of this State to do the business set forth in its certificate of authority."

The duties and liabilities imposed by the statute upon corporations authorized to do business in this State is not denied. The principal defense interposed is that Whittemore did not keep, and it was not his duty to keep, the corporation books and records, and he never had them in his possession or under his control, and that it would be beyond his power to cause the books to be brought back from New York for the purpose of permitting their examination; that, as to the American Discount Company, the corporation had ceased to do business in Illinois, had removed its books and records to another State, and the court had no power to order it to bring its books and records back to this State for examination by the stockholders. The latter

contention is based upon the claim that the corporation's books and records had been removed to New York before the summons was served, and it is urged that a writ of *mandamus* should not be issued on a state of facts existing when the petition was filed if the state of facts had ceased when final judgment was rendered, or where the facts were unauthorized or illegal, or where it is beyond the possibility of performance. The case of *Edwards* v. *Schillinger*, 245 Ill. 231, is relied on as holding that where an effective decree cannot be entered compelling an act which can only be enforced by proceedings for contempt of parties beyond the jurisdiction of the court a local court will not take jurisdiction of the suit. That case was a bill in chancery filed by a trustee in bankruptcy to set aside a dividend declared by the directors of the corporation in fraud of creditors and applied by stockholders in payment of unpaid balances of their subscriptions to the capital stock. The corporation in that case was a Missouri corporation and does not appear to have been licensed to do business in Illinois. The corporation had been adjudged a bankrupt by the district court of the United States in Missouri, and all of its stockholders except the defendants were residents of that State and insolvent. What was said by the court in *Hooper* v. *Snow*, 325 Ill. 53, is undoubtedly the law applicable to the facts in that case. The court said the writ could only be issued to compel an act when it is the duty of the defendant to perform the act without the writ. If the petitioner must first establish the duty of the officer sought to be coerced, *mandamus* is not the proper remedy. The facts in that case clearly distinguish it from the instant case. Where the writ of *mandamus* is justified under the evidence it should not be denied unless it is clear that no benefits can possibly result from the issuing of it. (26 Cyc. 148.)

By section 84 of the general Corporation act the American Discount Company enjoyed the same rights and privi-

leges and was subject to the same liabilities and restrictions as a domestic corporation. It is clear from the evidence that, while still doing business in Illinois, the corporation, for some reason not disclosed, evaded and prevented an examination of its books by stockholders for some time, and about the time the stockholders became so clamorous as to make their demands upon Whittemore, who was the only official or agent of the corporation they could reach, the corporation began to remove its books and records to New York. We agree with the Appellate Court in its statement: "We think the evidence in the record does not warrant the conclusion that the records of the company had all been sent to New York and before the date the summons was served on Whittemore, April 30, 1926, but are of the opinion that the court was warranted in finding that all of the books and records had not been taken out of Illinois at the time of the service of the writ on Whittemore." Until the withdrawal of the corporation from Illinois on May 6, 1926, Whittemore was the agent of the corporation for service of process against the corporation and was also a director.

It is also contended by plaintiffs in error that the petition did not ask the circuit court to require that the corporation books and records be brought to Illinois for examination, and the judgment of the court was therefore wrong. The prayer of the petition was: "Wherefore your relators pray a writ of *mandamus* directed to the said American Discount Company, a corporation, Harry C. Radon, president and treasurer, and Myron W. Whittemore, director and agent, for service of process, commanding them or either of them forthwith to permit your relators, and/ or their duly authorized agents to examine the records and books of account of said American Discount Company and to submit the same to your relators or their duly authorized agents for such examination, and that your relators may be awarded their costs and damages herein, and that such

further order may be made in the premises as justice may require and as this court may deem meet." The judgment of the circuit court required the corporation to make available for examination in this State the books and records of the corporation necessary for a full understanding of the affairs of the corporation, whether the books were kept in Illinois or in New York. We think the prayer of the petition fully warranted the order and judgment of the court. If plaintiffs in error are correct in their contention that the books had been removed from Illinois before the judgment was entered and the court therefore had no jurisdiction to award the writ, it would be within the power of a corporation in any case to prevent the examination of its books and papers by removing them beyond the jurisdiction of the court after process was served upon it. Whittemore, a director, made the agent by the corporation for service of process upon it in Illinois, was within the jurisdiction of the court, was served with summons in a proceeding in which the statute gave the petitioners the right to inspect the books of the corporation, and we are of opinion the law cannot be circumvented by removing the books and records from Illinois before any judgment could be entered by the court. The conduct of plaintiffs in error in attempting to prevent the stockholders from enjoying a right which the statute expressly conferred upon them, makes no equitable appeal to the conscience of the court. It is perfectly clear from the record that the officers of the American Discount Company were very anxious to prevent the stockholders from being accorded the rights given them by the statute. They sought in every way for a considerable time to prevent this, and finally adopted the tactics of removing their books and records to another State. The record fails to show plaintiffs in error had completed the removal before summons was served, and in our opinion the court was justified in awarding the writ.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*